1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI ANDERBERG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware corporation,<br><br>Defendant. | Case No: 3:21-cv-01794-BAS-NLS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Heidi Anderberg, on behalf of herself and all others similarly situated, by and through her undersigned counsel, hereby sues The Hain Celestial Group, Inc. ("Defendant" or "Hain Celestial") and, upon information and belief and investigation of counsel, alleges as follows:

## I. <u>JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the class, as defined below is a citizen of a different state than Defendant, there are more than 1,000 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

2. The Court has personal jurisdiction over Defendant because Defendant transacts and does business within this judicial district and is committing the acts complained of below within this judicial district.  As a result, Defendant is subject to the jurisdiction of this Court pursuant to the laws of this State and Rule 4 of the Federal Rules of Civil Procedure.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District.

## II. <u>PARTIES</u>

4. Plaintiff Heidi Anderberg ("Anderberg" or "Plaintiff") is a resident of La Mesa, California.

5. Defendant The Hain Celestial Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its headquarters and principal place of business at 1111 Marcus Avenue #1, Lake Success, New York 11042.  Hain Celestial advertises as an organic and natural products company which participates in almost all natural categories with well-known brands, including Alba Botanica.  Hain Celestial manufactures its Alba Botanica brand products in Culver City, California. Hain Celestial is registered to do business in California under entity

FIRST AMENDED CLASS ACTION COMPLAINT

number C2675229.

### III.    FACTUAL ALLEGATIONS

6.    Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendant regarding its misleading business practices with respect to the labeling, marketing, and sale of its Alba Botanica Hawaiian Sunscreen "Reef-Friendly" branded chemical (or non-mineral) sunscreens.

7.    Defendant markets and sells chemical sunscreens with labeling and advertising that leads consumers to believe that the sunscreens are "Reef-Friendly", when in fact the chemical sunscreens contain active ingredients known to damage coral reefs and the marine life that inhabit them.

8.    Coral reefs are among the most biologically diverse, culturally significant, and economically valuable ecosystems on Earth. They provide nesting grounds and homes for hundreds of species of marine life, help stabilize the sea floor, prevent coastal erosion and storm surge damages, contribute to the mitigation of climate change by regulating carbon dioxide levels in the ocean, promote tourism, support your fresh seafood habit, and filter and clean seawater.[1]

9.    Coral reefs provide billions of dollars in food, jobs, recreational opportunities, coastal protection, and other important goods and services to people around the world.

10.    Yet coral reefs are at danger of going extinct. Nearly ten years ago, the World Resource Institute estimated that more than 60 percent of the world's reefs were under threat from local stressors, like fishing and land-based pollution. The Institute predicted that by the 2030s more than 90 percent of the world's reefs will be threatened due to human activities, with nearly 60 percent facing high, very high,

---

[1] Carrie Bell, *The Best Reef-Safe, Eco-Friendly Sunscreens*, ROLLING STONE, Jul. 1, 2021, https://www.rollingstone.com/product-recommendations/lifestyle/best-reef-safe-sunscreen-1180223/. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

or critical threat levels, and rising to 75 percent by the 2050s.[2]

11.    Since then, the scientific community's predictions have gotten bleaker. A study presented by the University of Hawaii Manoa at the San Diego Ocean Sciences Meeting 2020 predicts that all of the world's coral reefs will likely be lost by 2100 as rising sea temperatures, acidic water and pollution are proving too much for the reefs to handle.[3]

12.    Sunscreen pollution is among the serious threats harming coral reefs and the marine life that inhabit them. The sunscreen that you apply does not stay on your skin. When you swim or shower, sunscreen washes off and enters our waterways. It is estimated that each year between 4,000 to 6,000 metric tons of sunscreen enter in the oceans from swimmers, snorkelers, and divers.[4]

13.    An informational diagram on how sunscreen chemicals enter our oceans and affect the marine environment from the National Oceanic and Atmospheric Administration is provided below:

---

[2] *Warming, Acidic Oceans May Nearly Eliminate Coral Reef Habitats by 2100*, AGU, Feb. 17, 2020, https://news.agu.org/press-release/warming-acidic-oceans-may-nearly-eliminate-coral-reef-habitats-by-2100/. (Last visited Feb. 1, 2022).

[3] Jordan Davidson, *Coral Reefs Could Be Completely Lost to the Climate Crisis by 2100, New Study Finds*, ECOWATCH, Feb. 20, 2020, https://www.ecowatch.com/coral-reefs-climate-crisis-predictions-2645201373.html. (Last visited Feb. 1, 2022).

[4] *Why Should I Care About My Sunscreen?*, Coral Safe, https://coralsafe.com/pages/why-should-i-care-about-my-sunscreen. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT



14.    As seen in the diagram above, the National Oceanic and Atmospheric Administration reports that the following list of chemicals should be avoided due to the harm they pose to marine life:

    a.  3-Benzylidene camphor

    b.  4-Methylbenzylidene camphor

    c.  Octrocrylene

    d.  Benzophenone-1

    e.  Benzophenone-8

    f.  OD-PABA

    g.  Nano-Titanium dioxide

    h.  Nano-Zinc oxide

    i.  Octinoxate

    j.  Oxybenzone

FIRST AMENDED CLASS ACTION COMPLAINT

15.    The Haereticus Environmental Laboratory (HEL) is a non-profit scientific organization that specializes in research and advocacy in a number of areas including sunscreens and how their ingredients impact natural environmental habitats. The HEL reports that the following lists of chemicals should be avoided due to the harm they pose to coral reefs and marine life:

     a.  Oxybenzone;

     b.  Octinoxate;

     c.  Octocrylene;

     d.  Homosalate;

     e.  4-methylbenzylidene camphor;

     f.  PABA;

     g.  Parabens;

     h.  Triclosan;

     i.  Any nanoparticles or "nano-sized" zinc or titanium; and

     j.  Any form of microplastic.[5]

16.    The following are just some of the ways in which sunscreen chemicals affect corals reefs and the marine life that inhabit them:

     a.  Coral: sunscreen chemicals accumulate in tissues and can induce bleaching, damage DNA, deform young coral reefs, and even kill;

     b.  Green algae: sunscreen chemicals can impair growth and photosynthesis;

     c.  Mussels: sunscreen chemicals can induce defects in young;

     d.  Sea Urchins: sunscreen chemicals can damage immune and reproductive systems, and deform young;

     e.  Fish: sunscreen chemicals can decrease fertility and reproduction, and

---

[5] *What Chemicals are on the HEL list?*, HAERETICUS, https://haereticus-lab.org/protect-land-sea-certification-3/. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

cause female characteristics in male fish;

f.  Dolphins: sunscreen chemicals can accumulate in tissue and be transferred to the young.[6]

17.     Given the effects of sunscreen chemicals, ecologically conscientious consumers have become increasingly concerned with protecting marine life through individual action, including purchasing reef friendly personal care products, in particular sunscreen and skincare products, which are supposed to be free from chemicals that can harm reefs, including the marine life that inhabits and depends on them. Reef-safe skin care products, such as sunscreens and sun blocks, have quickly rose in popularity due to their perceived positive ecological impact.

18.     To win over consumers and obtain a premium price over their competitors, companies such as the Defendant, have responded in kind by trying to hide, confuse, or play loose with the term "reef friendly."

19.     Save The Reef, an organization dedicated to saving the world's oceans and marine life states the term "reef friendly" typically means that the sunscreen contains only mineral UV blocking ingredients like oxide and titanium dioxide. The organization advises consumers to avoid chemical sunscreens.[7]

20.     Chemical sunscreens generally consist of a combination of different chemical ingredients, primarily oxybenzone, octinoxate, and avobenzone,[8] but also includes other chemicals such as octocrylene and homosalate.[9] Each of these

---

[6] *Skincare Chemicals and Coral Reefs,* NATIONAL OCEAN SERVICE, https://oceanservice.noaa.gov/news/sunscreen-corals.html. (Last visited Feb. 1, 2022).

[7] *Reef Safe Sunscreen Guide*, SAVE THE REEF, https://savethereef.org/about-reef-save-sunscreen.html. (Last visited Feb. 1, 2022).

[8] *Reef Safe Sun Protection*, SUSTAINABLE TOURISM, https://www.sustainabletourismhawaii.org/reefsafesunscreen/. (Last visited Feb. 1, 2022).

[9] *Reef Safe Sunscreen Guide*, SAVE THE REEF, https://savethereef.org/about-reef-save-sunscreen.html. (Last visited Feb. 1, 2022).

chemicals are known to cause harm to coral reefs and marine life.

21. **Octocrylene.** Octocrylene is a chemical sunscreen ingredient often used to help stabilize another chemical sunscreen ingredient called avobenzone.[10] Research shows that octocrylene creates compounds that accumulate in coral reefs that in high enough concentrations impair coral metabolism, leaving the coral reef susceptible to bleaching and disease.[11] Researchers have detected octocrylene in dolphins, mussels, and other aquatic organisms.[12] The risk posed by octocrylene to coral reefs is so great in early 2021, a group of 50 organizations, businesses, individuals, and eminent scientists representing more than 1,000 constituents and concerned citizens in Hawaii, submitted testimony and evidence supporting a bill that bans sunscreens containing octocrylene and/or avobenzone.[13]  The bill, which successfully passed through its first and second congressional hearings, is awaiting a vote in its final hearing. Octocrylene has also been banned in sunscreen products sold in the U.S. Virgin Islands, in Key West, Florida, and the Republic of the Marshall Islands.[14] Octocrylene is also harmful to humans. Studies show that when

---

[10] *What is avobenzone and is it safe in sunscreen?*, GODDESS GARDEN, https://www.goddessgarden.com/what-is-avobenzone-and-is-it-safe-in-sunscreen/. (Last visited Feb. 1, 2022).

[11] *See* Melisa Pandika, *Common sunscreen ingredient octocrylene might be harmful to coral*, C&EN, Jan. 22, 2019, https://cen.acs.org/environment/water/Common-sunscreen-ingredient-octocrylene-might/97/web/2019/01. (Last visited Feb. 1, 2022).

[12] *Id.*

[13] Prior to banning avobenzone and octocrylene, Hawaii banned oxybenzone and octinoxate sunscreens. *See* Hawai'i Senate Bill Bans Harmful Sunscreen Chemicals - Center for Biological Diversity, BIOLOGICAL DIVERSITY, https://biologicaldiversity.org/w/news/press-releases/hawaii-senate-bill-bans-harmful-sunscreen-chemicals-2021-03-09/. (Last visited Feb. 1, 2022).

[14] *See* U.S. Virgin Islands Bans Sunscreens Harmful to Coral Reefs, National Parks Traveler, Jul. 9, 2019, https://www.nationalparkstraveler.org/2019/07/us-virgin-islands-bans-sunscreens-harmful-coral-reefs. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

octocrylene is absorbed through the skin, the chemical releases free radicals; a type of reactive oxygen species (ROS) that can damage skin cells and increase the risk for cancer and other health issues.

22.  **Avobenzone.** Avobenzone, the sunscreen chemical often paired with octocrylene, has the reputation of being the sunscreen industry's replacement for oxybenzone after that sunscreen chemical was banned in several areas. However, avobenzone's and oxybenzone's molecular structures are extremely similar and both have been shown to be harmful to users and waterways, especially over the long term.[15] Avobenzone is a type of petrochemical. Petrochemicals are damaging to coral reefs because they increase the rate of coral bleaching.[16] Like octocrylene, avobenzone is known to cause the release of free radicals that increase cancer risk, accelerates skin aging and contributes to the development of a myriad of allergies. Recent studies also show avobenzone can become toxic to our liver and kidneys when it comes into contact with chlorine. [17]

23.  **Homosalate.** Homosalate is another sunscreen chemical often used with avobenzone in sunscreens.[18] Homosalate is an organic compound that belongs to a class of chemicals called salicylates.[19] The sunscreen chemical does not break down easily and has become increasingly present in the environment.[20] Like octocrylene and avobenzone, homosalate has also been linked to hormone disruption in humans. A study from 2010 titled "Exposure patterns of UV filters,

---

[15] *Is avobenzone safe in sunscreens,* WAX HEAD, https://gowaxhead.com/blogs/the-thrive-lab/avobenzone-sunscreens. (Last visited Feb. 1, 2022).

[16] *Id.*

[17] *Id.*

[18] *Is Homosalate Safe?*, WAX HEAD, https://gowaxhead.com/blogs/the-thrive-lab/homosalate-safe. (Last visited Feb. 1, 2022).

[19] *Homosalate,* CAMPAIGN FOR SAFE COSMETICS, https://www.safecosmetics.org/get-the-facts/chemicals-of-concern/homosalate/. (Last visited Feb. 1, 2022).

[20] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

fragrances, parabens, phthalates, organochlor pesticides, PBDEs, and PCBs in human milk: Correlation of UV filters with use of cosmetics" found that in 54 mother-child pairs 85.2% of the breast milk samples contained concentrations of octocrylene and homosalate. This is particularly concerning given that homosalate is known to impact the body's hormone system's, particularly the estrogen system. In human breast cancer cells, (which grow and multiply in response to estrogen), homosalate exposure led to 3.5 times more cell growth and multiplication. Sunscreens containing homosalate were also shown to enhance the amount of pesticides absorbed through skin. Hormone disruption and pesticide disruption are also threats to reefs and aquatic organisms who see similar side effects and damage from these compounds.[21]

24.    In 2020, the FDA published a study titled "Effect of Sunscreen Application on Plasma Concentration of Sunscreen Active Ingredients: A Randomized Clinical Trial." The study showed that octocrylene, homosalate and avobenzone are all absorbed into the body after a single use. The FDA also found the sunscreen ingredients could be detected on the skin and in blood weeks after application ended.[22]

25.    **Octyl Salicylate.** Another common sunscreen chemical, octyl salicylate, is also found on various lists as an active ingredient to avoid for the safety of coral reefs. Like the other common sunscreen chemicals, octyl salicylate has also

---

[21] Margret Schlumpf et al., *Exposure patterns of UV filters, fragrances, parabens, phthalates, organochlor pesticides, pBDEs, an dPCBs in humand milk: Correlation of UV filters with use of cosmetics*, CHEMOSPHERE, Nov. 2010, https://www.sciencedirect.com/science/article/abs/pii/S004565351001132X?via%3Dihub. (Last visited Feb. 1, 2022).

[22] *Is Homosalate Safe?*, WAX HEAD, https://gowaxhead.com/blogs/the-thrive-lab/homosalate-safe. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

been shown to negatively affect human hormones and even cause male infertility.[23]

26.   The proposed bill in Hawaii to ban avobenzone and octocrylene is S.B.132. When S.B.132 passed through the State Senate Congressional Committee on Agriculture and Environment, the Committee found "that octocrylene is linked to significant harmful impacts on Hawaii's marine environment and ecosystems, including coral reefs that protect Hawaii's shoreline. Furthermore, as the environmental contamination of octocrylene is constantly refreshed and renewed daily by swimmers and beachgoers who apply sunscreens containing these three chemicals, the contamination persists in Hawaii's coastal waters." The Committee further found that since the prohibition of oxybenzone and octinoxate in Hawaii, "octocrylene and avobenzone have been shown to be harmful to marine life and human health and should also be kept out of our marine environment. Evolving science around the world clearly demonstrates that these ubiquitous and pervasive reef toxins irreversibly interfere with the life-cycles of Hawaii's foundational and endemic marine life. Furthermore, long-term exposure to avobenzone and octocrylene has been found to be lethal for some organisms living in freshwater environments." [24] The Congressional Committees for Energy & Environmental Protection and for Consumer Protection made similar findings.[25]

---

[23]   *Ethylhexyl Salicylate/Octisalate*, CURIOUS CHLORIDE, https://www.curiouschloride.com/substances/ethylhexyl-salicylate/. (Last visited Feb. 1, 2022).

[24]   Stand. Com. Rep. No. 464, S.B. No. 132, S.D. 1, (2021). Available at: https://www.capitol.hawaii.gov/session2021/CommReports/SB132_SD1_SSCR464_.htm. (Last visited Feb. 1, 2022).

[25]   Stand. Com. Rep. No. 1009, S.B. No. 132, S.D. 2, H.D. 1, (2021). Available at: https://www.capitol.hawaii.gov/session2021/CommReports/SB132_HD1_HSCR1009_.htm. (Last visited Feb. 1, 2022). *See also* Stand. Com. Rep. No. 639, S.B. No. 132, S.D. 2, (2021), available at: https://www.capitol.hawaii.gov/session2021/CommReports/SB132_SD2_SSCR639_.htm. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

27.     On February 17, 2021, the Department of Land and Natural Resources testified before the congressional committees and provided the following statement:

> Octocrylene is now the dominant UV-sunscreen contaminant in coastal waters. Recent scientific studies suggest that octocrylene may have negative impacts in aquatic environments equivalent to oxybenzone (already banned from Hawaii sunscreens). Octocrylene functions as an endocrine disruptor, a metabolism disruptor, and a reproductive disruptor. It has also been shown to reduce the ability of coral symbionts to photosynthesize. Scientific evidence suggests that it can have toxic impacts to a variety of aquatic organisms from corals, to fish, to mammals, to plants.
>
> Octisalate has displayed multiple hormonal disrupting activities with in vitro lab studies. In addition, disruption of mitochondrial membrane function, and possible apoptosis (programed cell death) was found. No coral toxicity studies were found for homosalate, but this chemical has been readily found in reef waters. Lab based studies have shown hormone-receptor disrupting activities in in vitro assays. Lethal and sublethal effects were found when the marine algae (Tetraselmis sp.) was exposed to homosalate, indicating potential impacts to phytoplankton communities. This highlights concerns that it could affect corals and suggests the need for testing for these potential effects. Both homosalate and octisalate are teratogens, which are known to cause embryonic development defects in mammals, fish, and larvae. As a result of these recent scientific findings, we feel that prohibiting the sale of products containing homosalate, octocrylene, and octisalate would likely benefit the health and resiliency of Hawaiʻi's coral reef ecosystems.
>
> The Department supports the use of sunscreens that do not contain chemicals that are harmful to marine life, as well as sun protective clothing, as alternatives. The Department continues to conduct outreach efforts to help the public understand the issues regarding using oxybenzone and similar chemicals in the ocean so they can be better informed and make better choices regarding sun protection. These efforts include information on the Department's Division of Aquatic Resources website, focused one-on-one outreach, news releases,

11

videos, interaction with partner organizations, and meetings with boat tour operators and vendors who sell sunscreen. The Department continues to explore other ways to inform the public on this issue.[26]

28.    On February 21, 2019, the FDA issued a proposed rule in which it proposed to take all sunscreen ingredients, except for zinc oxide and titanium oxide, off of the list of chemicals generally recognized as safe and effective (GRASE) for use in sunscreens due to insufficient data of its safety and effectiveness.[27]

29.    The FDA finalized its proposed order on September 24, 2021. The order states that sunscreens containing octocrylene, avobenzone, homosalate, or octisalate **do not** have GRASE status because additional data is needed to show whether these sunscreens are safe and effective.[28]

30.    Defendant's chemical sunscreens are sold and advertised as "Earth-Friendly" or "Reef-Friendly," yet contain avobenzone, octocrylene, homosalate and octyl salicylate. Thus, the sunscreens are being falsely advertised to consumers who are purchasing these sunscreens at a premium with reliance on Defendant's false and deceptive language.

31.    Defendant's tagline "we believe the future is beautiful" is counter intuitive to Defendant creating, branding, advertising and selling a sunscreen as

---

[26] *In consideration of Senate Bill 132, Senate Draft 1 Relating to Water Pollution Before the Senate Comm. On Com. and Consumer Protection*, 117th Cong. (2021) (statement of Suzanne D. Case, Chairperson of the Hawaii Dep't of Land and Natural Resources).

[27] *FDA Fact Sheet – FDA Proposed Rule: Sunscreen Drug Products for over-the-counter-human use; proposal to amend and lift stay on monograph*, FDA, https://www.fda.gov/media/124655/download. (Last visited Feb. 1, 2022).

[28] *Questions and Answers: FDA posts deemed final order and proposed order for over-the-counter sunscreen*, FDA, https://www.fda.gov/drugs/understanding-over-counter-medicines/questions-and-answers-fda-posts-deemed-final-order-and-proposed-order-over-counter-sunscreen#:~:text=Based%20on%20new%20data%20and,the%20evidence%20shows%20that%20these. (Last visited Feb. 1, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

"reef-friendly" when research has shown the chemicals in these sunscreens are harmful to the marine environments and coral reefs.

32.    By advertising "reef-friendly" and "cruelty-free," yet using active chemical ingredients which research has shown to cause reef and marine damage, Defendant is deceiving its customers who are relying on its representations.

33.    Defendant is making a profit from consumers who are attempting to be ecologically conscious and paying a higher price for a product in order to accomplish this goal.

34.    The chemical sunscreens at issue (herein after referred to as "the Products") which bear labeling and advertising stating "Reef Friendly," yet contain octocrylene and/or avobenzone are as follows:

   a.  Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50

   b.  Alba Botanica Cool Sport Sunscreen Refreshing Clear Spray 50

   c.  Alba Botanica Kids Sunscreen Tropical Fruit Clear Spray 50

   d.  Alba Botanica Sensitive Sunscreen Fragrance Free Clear Spray 50

   e.  Alba Botanica Maximum Sunscreen Fragrance Free Clear Spray 70

   f.  Alba Botanica Hawaiian Sunscreen Aloe Vera 30 (cream version)

   g.  Alba Botanica Hawaiian Sunscreen Green Tea (cream version)

   h.  Alba Botanica Soothing Sunscreen Pure Lavender 45 (cream version)

   i.  Alba Botanica Kids Sunscreen Tropical Fruit 45 (cream version)

   j.  Alba Botanica Sport Sunscreen Fragrance Free 45 (cream version)

   k.  Alba Botanica Sweet Pea Sheer Shield Sunscreen 45 (cream version)

   l.  Alba Botanica Sensitive Sheer Shield Sunscreen 45 (cream version)

   m. Alba Botanica Facial Sheer Shield Sunscreen 45 (cream version)

   n.  Alba Botanica Fast Fix Sun Stick 30

35.    The above Products are all substantially similar because they include the "Reef Friendly" advertising and labeling claims.

FIRST AMENDED CLASS ACTION COMPLAINT

36.   The above Products are sold at various locations throughout the US including Target and Sprouts, however, they have substantially different pricing depending on the store location. For example, Alba Botanical Hawaiian Sunscreen Coconut Spray 50 sells for $11.99 at Target, however, in the same shopping center, in a Sprouts, the same exact sunscreen sells for $17.99.

37.   Defendant deceptively labels, advertises and packages the Products to target a growing consumer interest in purchasing cleaner products that would not cause or potentially cause harm to coral reefs or other marine life.

38.   Many of these shoppers who tend to purchase natural or organic tend to shop at stores like Sprouts and tend to pay more for these products.

39.   Below are true and accurate photographic images from a shelf at Target selling Defendant's line of sunscreens.



FIRST AMENDED CLASS ACTION COMPLAINT

40.     An image of the Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50 from that same shelf is depicted larger below.



41.     Below is the back label of the same product - Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50.

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23
24

42.    As shown below, the exterior of all Defendant's sunscreens displayed

25   state "Reef Friendly* & cruelty free" on the top left in cursive writing.

26
27   
28

FIRST AMENDED CLASS ACTION COMPLAINT

43.     As can be seen from the first picture showing a display of Defendant's products at Target, Defendant's sunscreen products are shelved near and with mineral sunscreens that actually are known to be safe for coral reefs and marine life (Bare Republic mineral sunscreen products, Blue Lizard and All Good). *See* https://www.buzzfeed.com/terripous/chemical-free-sunscreens-mineral-sunscreens. (Last visited Feb. 1, 2022).

44.     Although Defendant does sell mineral sunscreens as well as chemical sunscreens, all of the packaging and labeling for Defendant's Products bear the same "Reef Friendly" labeling despite the chemical sunscreen products (the Products) containing active ingredients that are "Reef Friendly" pursuant to known and extensive research.

45.     As the entity responsible for development, manufacturing, packaging, advertising, distribution, and sale of the Products, Defendant knew or should have known of the research which concludes that the chemicals in its Products break down coral reefs and disturb other marine life and that each of the chemical sunscreen Products falsely and deceptively misrepresents that the Products are "Reef Friendly."

46.     Defendant knows, knew or should have known, that Plaintiff and other ecologically conscientious consumers did and would rely on the labeling, packaging, and advertising before purchasing the chemical sunscreen Products, and would reasonably believe that the chemical sunscreen Products contained no ingredients that would harm coral reefs and other marine life.

47.     Plaintiff and other reasonable consumers did not know, and had no reason to know, that the chemical sunscreen Products contain ingredients that can harm coral reefs and other marine life. The Products are marketed to consumers with labeling that shows leaves of Hawaiian palm trees and the term Hawaiian is further deceiving when it is Hawaii that is attempting to further its ban to include

FIRST AMENDED CLASS ACTION COMPLAINT

avobenzone and octocrylene which have been found as not safe to coral reefs.

48.     There is no disclaimer or other statement indicating that some ingredients in the Products are actually not safe for coral reefs and other marine life. Moreover, even if a reasonable consumer was to read the ingredient list, a reasonable consumer would not know whether octocrylene or avobenzone are in fact reef safe or not.

49.     Because the Products are not "Reef Friendly" as reasonably expected by Plaintiff and other consumers, Defendant's marketing of the Products was and continues to be misleading and deceptive.

50.     Moreover, by deceptively labeling and misleading consumers that the Products are "Reef Friendly," Defendant is in violation of FDA regulations, which prohibit "claims that would be false and/or misleading on sunscreen products." 21 C.F.R. § 201.327(g).

51.     Each consumer has been exposed to the same or substantially similar deceptive practices because: (1) each of the chemical sunscreen Products are advertised as "Reef Friendly" and (2) each of the chemical sunscreen Products contain at least two active ingredients, avobenzone and octocrylene, that are harmful to coral and marine life.

52.     Plaintiff and other consumers have paid an unlawful premium for the chemicals Products they were made to believe where "Reef Friendly." In fact, Defendant's Products, which are sold near mineral sunscreens that are actually reef friendly or at more natural stores are significantly more expensive than chemical sunscreens sold at CVS or Walmart and thus consumers believe the Products to be cleaner and safer.

53.     Moreover, Plaintiff and other consumers would have paid significantly less for the Products had they known that the Products contained active ingredients that would harm coral reefs and marine life. Therefore, Plaintiff and other

consumers purchasing the Products suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

54. As a result of its misleading business practices, and the harm caused to Plaintiff and other consumers, Defendant should be enjoined from deceptively representing that the Products are "Reef Friendly." Furthermore, Defendant should be required to pay for all damages caused to misled consumers, including Plaintiff.

## IV.  PLAINTIFF'S INDIVIDUAL ALLEGATIONS

55. Plaintiff Heidi Anderberg has been purchasing Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50 and Alba Botanica Hawaiian Sunscreen Green Tea 45 (cream version) consistently for the past two years for personal and household use.

56. Anderberg is eco-conscious and wanted a product that had clean chemicals and was reef-safe.

57. After reviewing the packaging for Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50 as well as Alba Botanica Hawaiian Sunscreen Green Tea 45 (cream version), Anderberg believed the products to have clean chemicals and be reef friendly as advertised.

FIRST AMENDED CLASS ACTION COMPLAINT

58.     The Abla Botanica Hawaiian Sunscreen Coconut Clear Spray 50 and Alba Botanica Hawaiian Sunscreen Green Tea 45 (cream version) purchased by Anderberg are shown below



59.     Each of the Products Anderberg purchased contained the claim "Reef Friendly" on the lower portion of the front of the label written in blue cursive lettering with a white and blue background depicting the ocean.

FIRST AMENDED CLASS ACTION COMPLAINT

60.     Below is the back of the Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50 and Alba Botanica Hawaiian Sunscreen Green Tea 45 (cream version) respectively which were purchased by Anderberg.





61.     Both the Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50 and Alba Botanica Hawaiian Sunscreen Green Tea 45 (cream version) purchased by the Plaintiff contain the harmful ingredients avobenzone, octocrylene, homosalate, and octyl salicylate.

62.     Anderberg did not know, and had no reason to know, that the Products she has been purchasing consistently included active ingredients that can harm coral reefs and other marine life.

FIRST AMENDED CLASS ACTION COMPLAINT

63.     Anderberg relied on Defendant's advertising boasting the products as reef friendly and Anderberg did not know that the active ingredients in the product she purchased are known and have been shown to be harmful to coral and marine life.

64.     Anderberg thus paid an unlawful premium for the product advertised as reef friendly when it in fact is not safe for coral reefs and marine life.

65.     Anderberg would not have purchased the products had the product been truthfully advertised and thus, as a result of its misleading business practices, Anderberg was harmed and suffered injury in fact and lost money as a result of Defendant's false, unfair and fraudulent practices.

66.     Anderberg intends to, desires to, and will purchase the Products again when she can do so with the assurance that the Products' labels and advertising, which indicate that the Products are "Reef Friendly," are lawful and consistent with the Products' ingredients.

## V.     CLASS ALLEGATIONS

67. Plaintiff brings this class action lawsuit individually and on behalf of the proposed following proposed class and subclass under Rule 23 of the Federal Rules of Civil Procedure:

**Nationwide Class:** All persons within the United States, within the applicable limitations period, who purchased any of the Products for personal and household use and not for resale.

**California Subclass:** All persons within California, within the applicable limitations period, who purchased any of the Products for personal and household use and not for resale.

67.     Excluded from the classes are the following individuals: officers and directors of Defendant and its parents, subsidiaries, affiliates, and any entity in which

Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

68.     Plaintiff reserves the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

69.     Numerosity. The members of the Class are so numerous that a joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiff at this time, Plaintiff believes the class numbers in the tens of thousands, if not more.

70.     Typicality. Plaintiff's claims are typical of the claims of the Class members because, among other things, Plaintiff sustained similar injuries to that of class members as a result of Defendant's uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendant.

71.     Adequacy. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff's interests do not conflict with the interests of the Class members and Plaintiff has retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

72.     Commonality. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the class, including the following:

    **a.** Whether Defendant engaged in the course of conduct alleged herein;

    **b.** Whether Defendant's conduct is likely to deceive a reasonable consumer;

    **c.** Whether Defendant's conduct constitutes an unfair or deceptive act or practice;

    **d.** Whether Defendant violated the consumer protection statutes set forth below;

    **e.** Whether Plaintiff and the class members are entitled to restitution

pursuant to the UCL;

**f.** Whether Defendant's uniform acts and practices violate the CLRA;

**g.** Whether Plaintiff and the class members are entitled to damages pursuant to the CLRA;

**h.** Whether, as a result of Defendant's conduct, Plaintiff and the Class members suffered injury; and

**i.** The nature of the relief, including equitable relief, to which Plaintiff and class Members are entitled.

73. Predominance. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's conduct.

74. Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable.  Furthermore, as damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

75. Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to Class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently

1  adjudicating this controversy.

2      76.    This class action is also properly brought and should be maintained as

3  a class action because Plaintiff seeks injunctive relief and declaratory relief on behalf

4  of the Class members on grounds generally applicable to the proposed class.

5  Certification is appropriate because Defendant has acted or refused to act in a manner

6  that applies generally to the proposed class, making final declaratory or injunctive

7  relief appropriate.

8                   **VI.        CAUSES OF ACTION**

9                   **FIRST CAUSE OF ACTION**

10            **Violation of the California's Unfair Competition Law**

11               **Cal. Bus. & Prof. Code §§ 17200, *et seq.***

12                **(*On Behalf of Plaintiff and the Classes*)**

13     77.    Plaintiff re-alleges and incorporates by reference each and every

14  allegation contained elsewhere in this Complaint as if fully set forth herein.

15     78.    Defendant is subject to California's Unfair Competition Law, Cal. Bus.

16  & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair

17  competition shall mean and include unlawful, unfair or fraudulent business

18  practices…"

19                        **Unfair Prong**

20     79.    The UCL prohibits "unfair competition," which is broadly defined as

21  including "any unlawful, unfair or fraudulent business act or practice and unfair,

22  deceptive, untrue or misleading advertising and any act prohibited by Chapter 1

23  (commencing with Section 17500) of Part 3 of Division 7 of the Business and

24  Professions Code." Cal. Bus. & Prof. Code §17200.

25     80.    Defendant's business practices, described herein, violated the "unfair"

26  prong of the UCL in that their conduct is substantially injurious to consumers,

27  offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as

28

1  the gravity of the conduct outweighs any alleged benefits.

2        81.    Defendant has made material misrepresentations and omissions, both

3  directly and indirectly, related to their Products advertised as "Reef-Friendly."

4  Defendant's conduct was and continues to be of no benefit to purchasers of the

5  Products, as it is misleading, unfair, unlawful and is injurious to consumers who

6  purchased the Products and were deceived by Defendant's misrepresentations.

7  Deceiving consumers about the Products' impact on the environment is of no benefit

8  to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

9        82.    As such, Defendant has engaged in unfair or deceptive acts in violation

10  of the UCL. Defendant is aware of the violations but have failed to adequately and

11  affirmatively take steps to cure the misconduct.

12  **Fraudulent Prong**

13        83.    Under the "fraudulent" prong, a business practice is prohibited if it is

14  likely to mislead or deceive a reasonable consumer or, where the business practice

15  is aimed at a particularly susceptible audience, a reasonable member of that target

16  audience. *See Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 506-07 (2003).

17        84.    Defendant committed "fraudulent" business acts or practices by, among

18  other things, engaging in conduct Defendant knew or should have known would

19  likely to and did deceive reasonable consumers, including Plaintiff and the members

20  of the Classes. By relying on Defendant's false and misleading representations

21  indicating the Products are "Reef Friendly," Plaintiff and the other members of the

22  Class purchased the Products. Moreover, based on the very materiality of

23  Defendant's fraudulent and misleading conduct, reliance on such conduct as a

24  material reason for the decision to purchase the Products may be presumed or

25  inferred for Plaintiff and members of the Classes.

26        85.    Defendant knew or should have known that its labeling and marketing

27  of the Products would likely deceive a reasonable consumer.

28

First Amended Class Action Complaint

86.     Plaintiff and Class members acted reasonably when they paid money for Defendant's Product which they believed to be of higher price point because of truthful representations.

<strong>Unlawful Prong</strong>

87.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

88.     Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the Consumers Legal Remedies Act, the False Advertising Law, and 21 C.F.R. § 201.327(g). Defendant's conduct also constitutes a breach of warranty. On account of each of these violations of law, Defendant has also violated the "unlawful" prong of the UCL.

89.     In accordance with California Business & Professions Code §17203, Plaintiff seeks an order: (1) enjoining Defendant from continuing to conduct business through its fraudulent conduct; and (2) requiring Defendant to conduct truthful and transparent marketing of its products.

90.     As a result of Defendant's conduct, Plaintiff seeks restitution, disgorgement, and injunctive under California Business & Professions Code §17203.

<strong><u>SECOND CAUSE OF ACTION</u></strong>

<strong>Violation of the California's Consumers Legal Remedies Act</strong>

<strong>Cal. Bus. & Prof. Code §§ 1750, <em>et seq.</em></strong>

<strong><em>(On Behalf of Plaintiff and the California Subclass for Injunctive Relief only)</em></strong>

91.     Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

92.     Each Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchase of such Products by Plaintiff and members of the

California Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

93.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . . ." By marketing the Products with their current labels, packaging, and advertisements, Defendant has represented and continues to represent that the Products have characteristics (i.e., are safe for reefs and other marine life) when they are not safe for reefs and other marine life. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

94.   Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current labels, packaging, and advertisements, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., safe for reefs and other marine life) when they do not meet this standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

95.   Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By labeling, packaging, and marketing the Products as "Reef Friendly" so that a reasonable consumer would believe that the Products are "Reef Friendly," and then intentionally not selling Products that are "Reef Friendly," Defendant has violated section 1770(a)(9) of the CLRA.

96.   Defendant also violated the CLRA by intentionally failing to disclose that the Products contain at least two active ingredients that cause or can cause damage to coral reefs and marine life.

97.   At all relevant times, Defendant has known or reasonably should have known that the Products are not "Reef Friendly," and that Plaintiff and other

members of the California Subclass would reasonably and justifiably rely on that representation in purchasing the Products.

98.    Plaintiff and members of the California Subclass have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of the California Subclass.

99.    Plaintiff and members of the California Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products had they known that Defendant's conduct was misleading and fraudulent.

100.    Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful acts and unfair and unlawful business practices.

101.    Pursuant to Cal. Civ. Code § 1782, on October 18, 2021, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. The CLRA letter provided notice of Defendant's violation of the CLRA that demanded that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. Defendant has failed to take corrective action after thirty days of the date of Plaintiff's CLRA letter. As such, Plaintiff also seeks damages under the CLRA.

102.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff's CLRA venue declaration is attached hereto as Exhibit A.

## THIRD CAUSE OF ACTION

### False Advertising

### Cal. Bus. & Prof. Code §§ 17500 *et seq.* and 17535

*(On Behalf of Plaintiff and the Classes)*

103.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

104.   Plaintiff brings this claim individually and on behalf of the members of the Class.

105.   The False Advertising Law prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

106.   As detailed above, Defendant's marketing and sale of the Products as being "Reef Friendly" is likely to deceive a reasonable consumer because the Products contain ingredients that are harmful to coral reefs and other marine life.

107.   In reliance of Defendant's false and misleading representations indicating the Products are "Reef Friendly," Plaintiff and the other members of the Classes purchased the Products. Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and the members of the Classes.

108.   Defendant knew or should have known that its labeling and marketing of the Products is likely to deceive a reasonable consumer.

109.   Plaintiff and members of the Classes request that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff and members of the Classes, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the False Advertising Law or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

FIRST AMENDED CLASS ACTION COMPLAINT

### FOURTH CAUSE OF ACTION

**Breach of Express Warranty**

**California Commercial Code § 2312**

***(On Behalf of Plaintiff and the Classes)***

110.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

111.   California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

112.   Defendant has expressly warranted on the packaging of the Products that they are "Reef Friendly." This representation about the Products: (1) is an affirmation of fact and promises made by Defendant to consumers that the Products are in fact "Reef Friendly"; (2) became part of the basis of the bargain to purchase the Products when Plaintiff relied on the representation; and (3) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' representation.

113.   Plaintiff and members of the Class reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to the warranty.

FIRST AMENDED CLASS ACTION COMPLAINT

114.   Defendant has breached the express warranty made to Plaintiff and members of the Classes by selling the Products, which contain ingredients that are not reef friendly or safe.

115.   Plaintiff and members of the Class reasonably and justifiably relied on the foregoing express warranty, believing that the Products did in fact conform to the warranty.

116.   Defendant has breached the express warranty made to Plaintiff and members of the Classes by selling the Products, which contain ingredients that are not reef friendly or safe.

117.   Plaintiff and members of the Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Classes had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with the Products.

118.   As a result, Plaintiff and the Classes suffered injury and deserve to recover all damages afforded under the law.

## FIFTH CAUSE OF ACTION

### Breach of Implied Warranty

### California Commercial Code § 2314

### *(On Behalf of Plaintiff and the Classes)*

119.   Plaintiff re-alleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

120.   California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

121.   California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

122.   Defendant is a merchant with respect to the sale of sunscreen products, including the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

123.   By advertising the Products with their current labeling, Defendant made a promise on the label of the Products that the Products are "Reef Friendly." But the Products have not "conformed to the promises . . . made on the container or label" because they are not "Reef Friendly" as outlined above. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

124.   Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

125.   If Plaintiff and members of the Classes had known that the Products were not "Reef Friendly," they would not have been willing to pay the premium price associated with them or would not have purchased them at all. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

## VII.      **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter a judgment in their favor and against Defendant, as follows:

126.   Determining that this action may be maintained as a class action under

Rule 23 of the Federal Rules of Civil Procedure and appointing them and her Counsel to represent the Class;

127. Requiring Defendant bear the cost of Class notice;

128. Finding Defendant's Conduct was unlawful as alleged herein;

129. Enjoining Defendant from engaging in the wrongful conduct complained and an award of damages as to violations of the CLRA;

130. Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

131. Awarding Plaintiff and Class members actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in an amount to be determined;

132. Awarding Plaintiff and Class members costs of suit and attorneys' fees, as allowable by law; and

133. Granting such other and further relief as this Court may deem jury and proper.

## VIII.      **<u>DEMAND FOR JURY TRIAL</u>**

134. Plaintiff hereby demands a trial by jury of all issues so triable.


Dated: February 2, 2022                     Respectfully submitted,

                                            */s/ Ronald A. Marron*
                                            Ronald A. Marron
                                            **LAW   OFFICES   OF   RONALD   A.
                                            MARRON**
                                            RONALD A. MARRON
                                            *ron@consumersadvocates.com*
                                            ALEXIS M. WOOD
                                            *alexis@consumersadvocates.com*
                                            KAS L. GALLUCCI
                                            *kas@consumersadvocates.com*
                                            651 Arroyo Drive

34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed
Classes***

35

FIRST AMENDED CLASS ACTION COMPLAINT