# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI ANDERBERG, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:21-cv-01794-RBM-SBC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>[Doc. 42] |

On March 2, 2022, Defendant The Hain Celestial Group, Inc. ("Defendant") filed a Motion to Dismiss Plaintiff Heidi Anderberg's ("Plaintiff") First Amended Class Action Complaint ("Motion to Dismiss"). (Doc. 16.)  Plaintiff filed an opposition to Defendant's Motion to Dismiss on April 11, 2022 (Doc. 19), and Defendant filed its reply on April 18, 2022 (Doc. 20).  On January 26, 2023, the Court issued its Order Denying Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Order").  (Doc. 23.)

On June 30, 2023, Defendant filed a Motion for Reconsideration ("Motion for Reconsideration").  (Doc. 42.)  Plaintiff filed an opposition to the Motion for Reconsideration ("Opposition") on August 7, 2023 (Doc. 44), and Defendant filed a reply

on August 11, 2023 ("Reply") (Doc. 47).

For the reasons set forth below, Defendant's Motion for Reconsideration is **DENIED**.

## I. BACKGROUND

### A. Plaintiff's First Amended Complaint

On October 20, 2021, Plaintiff filed this class action complaint against Defendant. (Doc. 1.) Plaintiff subsequently filed a First Amended Class Action Complaint ("FAC") on February 2, 2022. (Doc. 13.) Plaintiff's FAC asserts the following causes of action: (1) violations of California's Unfair Competition Law ("UCL"), (2) violations of California's Consumers Legal Remedies Act ("CLRA"), (3) violations of California's False Advertising Law ("FAL"), (4) breach of express warranty, and (5) breach of implied warranty. (FAC ¶¶ 77–125.)

In her FAC, Plaintiff asserts that Defendant "markets and sells chemical sunscreens with labeling and advertising that leads consumers to believe that the sunscreens are 'Reef[]Friendly', when in fact the chemical sunscreens contain active ingredients known to damage coral reefs and the marine life that inhabit them." (FAC ¶ 7.) The FAC discusses the dangers various chemicals pose to coral reefs and states "[c]hemical sunscreens generally consist of a combination of different chemical ingredients, primarily oxybenzone, octinoxate, and avobenzone, but also include[] other chemicals such as octocrylene and homosalate" each of which "are known to cause harm to coral reefs and marine life." (FAC ¶ 20.) Thus, Plaintiff argues that Defendant labeling its sunscreen products as "Reef Friendly" is misleading because the products "contain avobenzone, octocrylene, homosalate and octyl salicylate." (FAC ¶¶ 30, 49.)

The FAC includes Plaintiff's individual allegations as well as class allegations. In regard to Plaintiff's individual allegations, she explains that she "has been purchasing Alba Botanica Hawaiian Sunscreen Coconut Clear Spray 50 and Alba Botanica Hawaiian Sunscreen Green Tea 45 (cream version) consistently for the past two years for personal and household use." (FAC ¶ 55.) Plaintiff is "eco-conscious" and "believed the products

to have clean chemicals and be reef friendly as advertised." (FAC ¶¶ 56–57.) Thus, Plaintiff alleges she "paid an unlawful premium for the product advertised as reef friendly when it in fact is not safe for coral reefs and marine life" and "would not have purchased the products had the product been truthfully advertised." (FAC ¶¶ 64–65.) Accordingly, Plaintiff claims she "was harmed and suffered injury in fact and lost money as a result of Defendant's false, unfair and fraudulent practices." (FAC ¶ 65.)

In regard to Plaintiff's class allegations, Plaintiff lists a total of fourteen of Defendant's chemical sunscreens (the "Products") "which bear labeling stating 'Reef Friendly,' yet contain octocrylene and/or avobenzone." (FAC ¶ 34.) Plaintiff thus brings a class action on behalf of a nationwide class and a California subclass of individuals who, within the applicable limitations period, purchased any of the fourteen products from Defendant. (FAC ¶ 67.)

**B.    Defendant's Motion to Dismiss**

On March 2, 2022, Defendant filed its Motion to Dismiss Plaintiff's FAC. (Doc. 16-1.) In its Motion to Dismiss, Defendant argued that the term "Reef Friendly" is not deceptive because a "reasonable consumer" would not be misled by the representation. (*Id.* at 4.)[1] Specifically, Defendant argued that, when viewed as a whole, the sunscreen labeling, including the ingredient list on the back, makes clear that "Reef Friendly" only refers to the absence of oxybenzone and octinoxate. (*Id.* at 5.) Defendant also contended that a manufacturer may use the ingredient list to eliminate any "purported ambiguity" on the front label. (*Id.* at 8.)

In the Court's Order on Defendant's Motion to Dismiss, the Court found that it could not conclude as a matter of law that a reasonable consumer would not be deceived by the term "Reef Friendly" and decided that this was not the "rare situation" warranting dismissal of Plaintiff's UCL, CLRA, and FAL claims. (Doc. 23 at 12.)

---

[1] The Court cites to the court-generated CM/ECF pagination unless otherwise noted.

### C. Defendant's Motion for Reconsideration

On June 30, 2023, Defendant filed the Motion for Reconsideration at issue here. (Doc. 42-1.) Defendant argues that the Ninth's Circuit's recent decision in *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) ("*McGinity*") is an "intervening change" in "controlling law" that dictates a different result on its Motion to Dismiss. (*Id.* at 6–7.)

## II.  LEGAL STANDARD

Civil Local Rile 7.1(i) outlines the proper procedures for applications for reconsideration:

> 1. Whenever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part, … it will be the continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent application is made an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: … *what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.*
>
> *2. Except as may be allowed under Rules 59 and 60 of the Federal Rules of Civil Procedure, any motion or application for reconsideration must be filed within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered.*

Civ. L.R. 7.1(i) (emphasis added). Here, Defendant's Motion was not filed within 28 days of the Court's order denying Defendant's Motion to Dismiss; therefore, Defendant's Motion must be permissible under Federal Rules of Civil Procedure 59 or 60.

"'[A] motion for reconsideration 'is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of judgment. Otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order.'" *Cir. City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1064 (9th Cir. 2005) (quoting *Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001)). Here, Defendant's Motion was not filed within ten days of entry of judgment, which has

not yet occurred. Therefore, Defendant's Motion must be treated as a Rule 60(b) motion for relief from the Court's Order denying Defendant's Motion to Dismiss.

Federal Rule of Civil Procedure 60(b) provides that that the Court may relieve a party from its order for any "reason that justifies relief:"

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or *(6) any other reason that justifies relief*.

Fed. R. Civ. P. 60 (emphasis added). Here, judgment has not been entered, and there is no evidence of mistake, inadvertence, surprise, or excusable neglect, newly discovered evidence, and/or fraud. Thus, the present Motion must be brought under Federal Rule of Civil Procedure Rule 60(b)(6).

The Ninth Circuit has held that the reasons justifying relief under Rule 60(b)(6) must be "extraordinary." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Rule 60(b) provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief.") (internal quotation marks omitted).

In its Motion for Reconsideration, Defendant contends that reconsideration is appropriate under Rule 60(b) when there is an "intervening change" in the "controlling law." (Doc. 42-1 at 8–9.) In support of this position, Defendant cites two published Ninth Circuit cases as well as several unpublished opinions from this District. (*Id.* (citing *Sch. Dist. No. 1J*, 5 F.3d 1255 and *389 Orange St. Partners v. Arnold*, 179 F.3d 656 (9th Cir.

1999).)[2]  Defendant then argues that the Ninth Circuit's recent decision in *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) is new controlling law warranting reconsideration of Defendant's Motion to Dismiss. (*Id.* at 10–11.)

For the reasons set forth below, the Court finds Defendant's argument unpersuasive.

### III.   DISCUSSION

**A.   *McGinity* Does Not Constitute an Intervening Change in Controlling Law**

A stated above, reconsideration is only appropriate under Rule 60(b)(6) in "extraordinary circumstances," such as an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty.*, 5 F.3d at 1263. For the reasons set forth below, the Court does not consider the Ninth Circuit's decision in *McGinity* an intervening change in controlling law.

**1.   *McGinity* Merely Reiterates Prior Ninth Circuit's Decisions**

*a)   Moore v. Trader Joe's Co.*

The Ninth Circuit's decision in *McGinity* is not new law. In fact, the Ninth Circuit's decision in *McGinity* reiterates its decision in *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ("*Trader Joe's*"), decided two years earlier.

In *Trader Joe's*, the Ninth Circuit held that the label "100% New Zealand Manuka Honey" on Trader Joe's Manuka honey was not likely to deceive a reasonable consumer into believing that the product contained only honey derived from the Manuka flower. *Moore*, 4 F.4th at 876-877. The Ninth Circuit reasoned that there was some ambiguity as to what the phrase "100% New Zealand Manuka Honey" meant. *Id.* at 882. For example,

---

[2] The Court notes that each of these Ninth Circuit cases was decided under Rule 59, not Rule 60(b). However, although never explicitly stated in any published Ninth Circuit opinion, it appears that the Ninth Circuit also considers a change in controlling law "a reason that justifies relief" under Rule 60(b)(6). *See e.g., Rhodes v. Raytheon Co.*, 663 F. App'x 541, 542 (9th Cir. 2016); *Holder v. Simon*, 384 F. App'x 669 (9th Cir. 2010); *In re Schafler*, 135 F. App'x 972, 973 (9th Cir. 2005). Thus, the Court will proceed with its analysis accordingly.

it could mean that the product was 100% Manuka Honey, that it was 100% derived from the Manuka flower, or that 100% of the honey was from New Zealand. *Id.* Given this ambiguity, the Ninth Circuit determined that a reasonable consumer would require more information before he or she could conclude that the honey was derived exclusively from the Manuka flower. *Id.* The Ninth Circuit then identified three other clues on the label that would dissuade a reasonable consumer from the false misconception that the honey was derived exclusively from the Manuka flower: "(1) the impossibility of making a honey that is 100% derived from one floral source, (2) the low price of Trader Joe's Manuka Honey, and (3) the presence of the '10+' on the label, all of which is readily available to anyone browsing the aisles of Trader Joe's."[3] *Id.* at 883. The Ninth Circuit also noted that the label fully complied with the Food and Drug Administration's "Honey Guidelines," which permit honey to be labeled with the name of its chief floral source. *Id.* at 881.

Applying its decision in *Trader Joe's*, the Ninth Circuit in *McGinity* decided that the term "Nature Fusion" on the front label of P&G's shampoos and conditioners was ambiguous and that the back label, including the ingredient list, could be used to resolve this ambiguity. *McGinity*, 69 F.4th at 1097–99 ("[h]ere, like in *Trader Joe's*, there is some ambiguity as to what "Nature Fusion" means…"). Like the various clues on the Manuka honey label in *Trader Joe's*, the Ninth Circuit found that the back label of the "Nature Fusion" products included an ingredient list disclosing the presence of both natural and synthetic ingredients. *Id.* at 1099. Likewise, the presence of the phrases "Smoothness Inspired by Nature" and "NatureFusion Smoothing System with Avocado Oil" on the label

---

[3] "In an effort to regulate and communicate the concentration of Manuka in Manuka Honey products sold to consumers, Manuka honey producers have created a scale to grade the purity of Manuka honey called the Unique Manuka Factor ('UMF') grading system. The UMF system grades honey on a scale of 5+ to 26+ based on the concentration of methylglyoxal that is itself related to the concentration of honey derived from Manuka flower nectar." *Moore*, 4 F.4th at 877–78. Thus, a rating of 10+ is on the low end of the scale. *Id.* at 878.

1  also clarified that P&G's "Nature Fusion" products contain both natural and synthetic
2  ingredients.  *Id.*  Finally, the Ninth Circuit noted that a consumer survey conducted by
3  Plaintiff and referenced in Plaintiff's complaint demonstrated that the majority (69.2%) of
4  consumers thought that the term "Nature Fusion" meant that the product contained both
5  natural and synthetic ingredients, which is accurate. (*Id.* at 1096.)  Thus, it was apparent
6  on the face of the plaintiff's complaint that the term "NatureFusion" was at worst
7  ambiguous to the reasonable consumer.  (*Id.*)

8  It is clear that the Ninth Circuit's decision in *McGinity* merely applies its decision in
9  *Trader Joe's* to a new set of facts and cannot be considered an "intervening change" in
10 "controlling law."

### b) *Moore v. Mars Petcare US, Inc.*

12 The *McGinity* panel also relies on the Ninth Circuit's prior decision in *Moore v.*
13 *Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ("*Mars Petcare*") for the proposition
14 that a back label ingredients list "can ameliorate any tendency of a label to mislead."
15 *McGinity*, 69 F.4th 1093 at 1098 (quotation omitted).

16 In *Mars Petcare*, the Ninth Circuit decided that "qualifiers in packaging, usually on
17 the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to
18 mislead.'  If, however, 'a back label ingredients list ... conflict[s] with, rather than
19 confirm[s], a front label claim,' the plaintiff's claim is not defeated."  *Moore*, 966 F.3d at
20 1017 (quoting *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1167 (2018)).  In other words,
21 a back label, including the ingredients list, can "ameliorate" (i.e., clarify) a misleading front
22 label but it cannot "ameliorate" am outright deceptive or false front label.  *Id.*

23 The *McGinity* case is merely an application of the Ninth Circuit's prior ruling in
24 *Mars Petcare*.  *McGinity*'s new use of the word "ambiguous" rather than "misleading"
25 does not create an "intervening change" in "controlling law."

### 2. The Ninth Circuit's Decision in *McGinity* Merely Affirms the District Court's Decision

The Ninth Circuit's decision in *McGinity* is not an "intervening change" in "controlling law" because it merely affirms the district court's ruling. The district court in *McGinity* found that the plaintiff had failed to allege sufficient facts showing that the term "Nature Fusion" was deceptive. *McGinity v. Procter & Gamble Co.*, No. 4:20-CV-08164-YGR, 2021 WL 3886048, at *2 (N.D. Cal. Aug. 31, 2021), aff'd, 69 F.4th 1093 (9th Cir. 2023). Like the Ninth Circuit, the court noted that Plaintiff's consumer survey demonstrated that most reasonable consumers (~77%) would understand the term "Nature Fusion" to mean that the product contained a mixture of natural and synthetic ingredients and that the ingredient list on the back label "ameliorate[d] any tendency of the label to mislead. *Id.* at *2-3 (quoting *Moore*, 966 F.3d at 1017). While the district court did not use the term "ambiguous," its ruling that the ingredient list on the back label of a product can "ameliorate any tendency of the label to mislead" is synonymous to the Ninth Circuit's ruling that a back label, including the ingredient list, can be used to resolve and/or clarify ambiguous language on the front label.

### 3. Defendant Already Made the *McGinity* Argument in its Motion to Dismiss

Defendant argued in its Motion to Dismiss that "a manufacturer can use disclosures elsewhere on the packaging—such as an ingredient list—to eliminate any *purported ambiguity*" and that "[a]bsent any affirmative misrepresentation as to the sunscreen's contents, Plaintiff has not stated—and cannot state—a plausible claim of deception." (Doc. 16-1 at 14–15 (emphasis added).) This argument mirrors the Ninth Circuit's rulings in *Trader Joe's*, *Mars Petcare*, and now *McGinity*. In fact, Defendant cited *Trader Joe's* and the district court's opinion in *McGinity* in its Motion to Dismiss and its reply memorandum in support of its Motion to Dismiss. (Doc. 16-1 at 10–11, 14; Doc. 20 at 7.) For Defendant to now claim that the ruling set forth in *McGinity* is an "intervening change" in "controlling law" is disingenuous.

## B. Even Assuming that *McGinity* Constitutes an Intervening Change in Controlling Law, *McGinity* is Easily Distinguishable from the Present Case

In her FAC, Plaintiff alleges that "Save the Reef, an organization dedicated to saving the world's oceans and marine life[,] states the term 'reef friendly' typically means that the sunscreen contains *only* mineral UV blocking ingredients like oxide and titanium dioxide" and that "[Save the Reef] advises consumers to avoid chemical sunscreens." (FAC ¶ 19 (emphasis added).) Yet, "Defendant's *chemical* sunscreens are sold and advertised as…'Reef-Friendly'…." (FAC ¶ 30 (emphasis added).)

Specifically, Plaintiff alleges that the chemicals octocrylene, avobenzone, homosalate, and octyl salicylate, all of which are found in Defendant's "Reef Friendly" sunscreen products, are harmful to marine life, including reefs. (FAC ¶¶ 14, 15, 20–30.) In support of these allegations, Plaintiff cites numerous sources, including online publications, studies, transcripts of government sessions, proposed laws, and congressional testimony from the Department of Land and Natural Resources. (FAC ¶¶ 21–30.) Thus, it is not apparent from Plaintiff's allegations that the phrase "Reef Friendly" is ambiguous.

In contrast, in *McGinity*, it was clear on the face of the plaintiff's complaint that the phrase "Nature Fusion" was ambiguous. In *McGinity*, plaintiff's counsel commissioned an independent third party to conduct a survey of more than 400 consumers regarding their impressions of the product's front labels. *McGinity*, 69 F.4th at 1096. The results of the survey revealed that 69.2% of consumers thought that the phrase "Nature Fusion" meant that the product contained both natural and synthetic ingredients, which is true. *Id.* Thus, the *McGinity* plaintiff's complaint revealed that the "Nature Fusion" language was at worst "ambiguous" and that this ambiguity could be resolved by reference to the back label. *Id.* at 1098.

Here, however, Plaintiff has not commissioned a consumer survey revealing that the phrase "Reef Friendly" is ambiguous. Rather, Plaintiff has alleged that "Reef Friendly" means sunscreen that is free of chemicals known to be harmful to reefs, including octocrylene, avobenzone, homosalate, and octyl salicylate, all of which are found in

Defendant's "Reef Friendly" sunscreen products. (FAC ¶¶ 14–15, 19–30.) Reconsideration of the Court's Order on Defendant's Motion to Dismiss is not warranted.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Reconsideration is **DENIED** in its entirety.

**IT IS SO ORDERED.**

DATE: November 6, 2023

*Ruth Bermudez Montenegro*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE